**Jose LOPEZ, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A04–0908–CR–464.**

Court of Appeals of Indiana.

May 13, 2010.

---

Ann M. Sutton, Marion County Public Defender Agency, Appellate Division, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Karl M. Scharnberg, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

CRONE, Judge.

Jose Lopez appeals his conviction for class A misdemeanor resisting law enforcement, arguing that the evidence is insufficient. We affirm.

The facts most favorable to the conviction show that on April 15, 2009, Indianapolis Metropolitan Police Department Officers Stacey Lettinga and Gary Smith received a report of domestic disturbance at an Indianapolis apartment and proceeded there to investigate. Officer Smith knocked on the door, and a woman told the officers to come inside. The officers saw Heidi Horatschki sitting in a chair, visibly upset and crying. Five men were also present. The officers asked Horatschki what was going on, but she has a speech impediment and was difficult to understand. Horatschki had also been drinking that day, and the officers could smell the odor of alcohol on her breath. Officer Smith commented that they might be able to understand Horatschki if she had any teeth. His statement angered Lopez, who was sitting on the couch. Lopez told the officers that Horatschki was upset due to a fight with her mother. To determine whether there was a domestic violence history between Horatschki and Lopez, Officer Lettinga asked him his name. Lopez became agitated and would not identify himself. The officers asked him for identification a second time, and he refused.

The officers were outnumbered six to two, and to insure their safety, Officer Lettinga asked Lopez to stand up so that she could handcuff him. Lopez refused, crossing his arms in front of his chest. The officers grabbed him and tried to pull him up, and "[h]e started to pull away." Tr. at 11. After "a small struggle" the officers pulled Lopez to a standing position. *Id.* at 29. Officer Lettinga asked Lopez several times to put his hands behind his back, but he refused to comply. "At one point [Lopez] had his arms crossed and then when [the officers] grabbed his arms, he started pulling away from [them]." *Id.* at 19. Officer Smith used his knee to strike Lopez's leg. The officers continued to ask Lopez to put his hands behind his back, and he refused. They "took [Lopez] to the ground and attempted to put his hands behind his back again, continuing to instruct him to put his hands behind his back." *Id.* at 12. Lopez was lying on his hands and would not put them behind his back. The officers were "struggling with his arms, trying to get them behind his back." *Id.* at 20. Officer Smith kneed Lopez again, and Officer Lettinga applied a "dry stun" with her Taser on "the back of [Lopez's] shoulder blades." *Id.* at 12. A few seconds later, Lopez offered his hands to the officers and was handcuffed.

On April 16, 2009, the State charged Lopez with class A misdemeanor resisting law enforcement. On July 22, 2009, the trial court found Lopez guilty as charged and sentenced him to one year, suspended, and forty hours of community service.

On appeal, Lopez argues that the evidence is insufficient to support his conviction. When reviewing a challenge to the sufficiency of the evidence, we neither reweigh the evidence nor judge witness credibility. *McHenry v. State*, 820 N.E.2d 124, 126 (Ind.2005). Rather, we consider only the evidence most favorable to the judgment and the reasonable inferences supporting it. *Id.* "We affirm if there is substantial evidence of probative value from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt." *Purvis v. State*, 829 N.E.2d 572, 587 (Ind.Ct.App.2005), *trans. denied.*

For the State to convict Lopez of resisting law enforcement, it was required to prove beyond a reasonable doubt that he knowingly or intentionally forcibly resisted, obstructed, or interfered with a law enforcement officer while the officer was lawfully engaged in the execution of the officer's duties. *See* Ind.Code § 35–44–3–3; Appellant's App. at 13.

Specifically, Lopez argues that the evidence merely shows that he was standing his ground and is insufficient to show that he "forcibly" resisted the officers' attempts to handcuff him. We observe that "forcibly" modifies "resists, obstructs, and interferes," which at first blush would seem to require that a person use some force beyond that which would be required if "forcibly" did not modify "resists, obstructs, and interferes." Indeed, our Supreme Court has stated,

A correct interpretation of [Indiana Code Section 35–44–3–3] requires us to give meaning to the word "forcibly," because the legislature included the word in the statute. In order to sustain the conviction, the State must have proven not only that [the defendant] resisted, but that he forcibly resisted, because the modifying word "forcibly" is within that section of the statute. "Forcibly" is a required element of the crime[.]

*Spangler v. State*, 607 N.E.2d 720, 723 (Ind.1993). According to the *Spangler* court, the "appropriate meaning" of "forcibly" as used in Indiana Code Section 35–44–3–3 is as follows: "One 'forcibly resists' law enforcement when *strong powerful, violent* means are used to evade a law enforcement official's rightful exercise of his or her duties." *Id.* (emphasis added).

Nevertheless, Indiana jurisprudence indicates that the amount of force required to convict a person of resisting law enforcement is not as great as one would expect under the language in *Spangler*. In *Johnson v. State*, 833 N.E.2d 516 (Ind. Ct.App.2005), another panel of this Court stated that it "may have moderated the definition of 'forcibly resist' as it was written in *Spangler*[,]" and noted that "until we are instructed otherwise by our Supreme Court, we see no reason to apply what appears to be an overly strict definition of forcibly resist[.]" *Id.* at 519; *see also J.S. v. State*, 843 N.E.2d 1013, 1017 (Ind.Ct.App.2006) (noting that Indiana courts had not applied an overly strict definition of "forcibly resist"), *trans. denied.*

Last year, our supreme court revisited the meaning of "forcibly" as used in Indiana Code Section 35–44–3–3. In *Graham v. State*, 903 N.E.2d 963 (Ind.2009), the Supreme Court made the following observations:

This Court's opinion in *Spangler*[ ] examined the elements of the crime of resisting. Justice DeBruler noted that the word "forcibly" modifies "resists, obstructs, or interferes" and that force is an element of the offense. He explained that one "forcibly resists" when "strong, powerful, violent means are used to evade a law enforcement official's rightful exercise of his or her duties." [607

N.E.2d at 723]. Spangler had refused to accept service of process from an officer, walking away from the officer in the face of demands that he accept a protective order. This Court held that such action was resistance to authority but not "forcible" resistance. "It is error as a matter of law to conclude," we said, "that 'forcibly resists' includes all actions that are not passive." *Id.* at 724. Spangler's conviction was reversed.

The force involved need not rise to the level of mayhem. In *Johnson*[ ], a defendant in custody "pushed away. with his shoulders while cursing and yelling" when the officer attempted to search him. As officers attempted to put him into a police vehicle, Johnson "stiffened up" and the police had to get physical in order to put him inside. [833 N.E.2d at 517]. The Court of Appeals correctly held that Johnson's actions constituted forcible resistance.

*Id.* at 965–66.

Thus, in *Graham,* the Supreme Court approved of the language used in *Spangler* to define "forcibly resist," while simultaneously approving of the holding in *Johnson.* Although the *Graham* court acknowledged that the resistance described in *Johnson* was "modest," *id.* at 966, the *Graham* court apparently overlooked the *Johnson* court's explicit acknowledgement that it was modifying the language of *Spangler.* Accordingly, we are somewhat hesitant to rely on *Spangler's* strong language because it does not appear to adequately describe the meaning of "forcibly resist" as it has more recently been applied. However, based on the fact-sensitive nature of these cases, a simple comparison of the facts of this case with those of previous cases will lead us to a just result.

Lopez asserts that this case is similar to *Ajabu v. State,* 704 N.E.2d 494 (Ind.Ct. App.1998). There, we held that the evidence was insufficient to support Ajabu's conviction for resisting arrest, reasoning as follows:

> [T]he facts do establish that Ajabu resisted officer McDonald. Specifically, the record reveals that Ajabu twisted and turned a little as he held onto his flag, even after being maced, and only let go after Officer Dubois dragged him approximately eight to ten feet.
>
> While we agree that this evidence establishes some resistance by Ajabu, the record fails to disclose any evidence from which a reasonable trier of fact could conclude beyond a reasonable doubt that Ajabu acted forcibly, as defined by our supreme court in *Spangler.* The evidence merely shows that Ajabu resisted Officer McDonald by claiming ownership [of] and holding onto his flag. The record does not reveal any evidence that Ajabu made threatening or violent actions toward the police.

*Id.* at 495–96 (footnote omitted).

However, we think that this case is more similar to *Johnson,* which our Supreme Court has cited with approval. In *Johnson,* we concluded that there was sufficient evidence that the defendant "forcibly" resisted arrest where he "turned away and pushed away with his shoulders" while the officer attempted to search him and "stiffened up" when the officers attempted to put him into the police car, thereby "requiring that the officers exert force to place him inside the transport vehicle." 833 N.E.2d at 517, 519.

Here, Lopez argues that he simply refused to uncross his arms. However, the evidence reveals more. Like the defendant in *Johnson,* Lopez did more than passively resist. After Lopez was ordered to stand to be cuffed, he refused, giving the officers no choice other than to try to physically pull him up from the couch.

When they did so, "[h]e started to pull away." Tr. at 11. When the officers grabbed his arms, he started to pull away from them. *Id.* at 19. When Lopez was on the ground, the officers "attempted to put his arms behind his back" and were unable to do so. *Id.* at 12. If the officers were unable to pull his arms out from under him, it is reasonable to infer that he was forcibly resisting their efforts rather than remaining entirely passive. Indeed, the officers struck him twice and tased him before they were able to handcuff him.[1] We observe that physical resistance to police action tends to escalate an already tense situation, as such resistance causes the police to apply greater and more physical efforts to force compliance.

We conclude that the evidence is sufficient to prove that Lopez acted with the requisite force in resisting the officers in the execution of their duties. *See J.S.,* 843 N.E.2d at 1017 (concluding that juvenile acted with requisite force where she "flailed her arms, pulled, jerked, and yanked away from" a school police officer); *Guthrie v. State,* 720 N.E.2d 7, 7 (Ind.Ct. App.1999) (concluding that defendant forcibly resisted where he refused to get out of jail wagon, was forcefully removed from wagon and placed on ground from which he refused to get up, was lifted to his feet and refused to walk by leaning back and stiffening his legs, and ultimately had to be carried into central receiving area), *trans. denied* (2000); *Wellman v. State,* 703 N.E.2d 1061, 1064 (Ind.Ct.App.1998) (concluding that defendant forcibly resisted where he placed his hands against door frame to hold himself inside his house after he was told that he was under arrest); *but see Graham,* 903 N.E.2d at 966 (defendant did not forcibly resist where officers laid defendant on ground and ordered him to present his arms for cuffing, and he refused to do so); *Colvin v. State,* 916 N.E.2d 306, 309 (Ind.Ct.App.2010) (defendant was not compliant with officers' commands, kept his hand in his pockets during struggle, and officers had to use force to execute the arrest, but there was no evidence that defendant stiffened his arms or otherwise forcibly resisted), *trans. denied; Berberena v. State,* 914 N.E.2d 780, 782–83 (Ind.Ct.App.2009) (officer "struggled with" defendant "to grab his hands and place him in handcuffs" but officer did not recall what defendant was doing with his hands but only that he, the officer, "forcibly placed" defendant's hands in handcuffs, and therefore, evidence was ambiguous as to whether defendant had forcibly resisted), *trans. denied.* Accordingly, there was probative evidence from which a reasonable trier of fact could have found Lopez guilty beyond a reasonable doubt of resisting law enforcement.

Affirmed.

BAKER, C.J., and DARDEN, J., concur.

---

1. However, we caution that relying only on the amount of force used by the police in subduing a defendant to determine whether the defendant "forcibly resisted" may have the unwanted effect of encouraging the police to use excessive force. Here, there is other, although modest, evidence that Lopez acted forcibly in resisting police efforts to handcuff him.