## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 11 2019, 8:31 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Philip R. Skodinski
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Josiah J. Swinney
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Zachary S. Adams,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

December 11, 2019

Court of Appeals Case No.
19A-CR-728

Appeal from the St. Joseph
Superior Court

The Honorable Jane Woodward
Miller, Judge

Trial Court Cause No.
71D01-1802-F4-9

**Bradford, Judge.**

# Case Summary

[1] Zachary Adams was charged with Level 6 felony resisting law enforcement, Level 6 felony auto theft, Level 6 felony identity deception, and Level 4 felony burglary. Adams entered into a negotiated plea deal under the terms of which he agreed to plead guilty to the resisting-law-enforcement and auto-theft charges. For its part, the State agreed to dismiss the identity-deception charge and that the sentence for the pled-to convictions would be capped at eighteen months. The parties further agreed that sentencing would occur following the resolution of the remaining burglary charge. Adams was subsequently found guilty of the burglary charge. On March 5, 2019, the trial court accepted the plea deal; entered judgments of convictions for resisting law enforcement, auto theft, and burglary; and sentenced Adams to an aggregate term of nine and one-half years.

[2] Adams challenges his burglary conviction, arguing that the trial court abused its discretion in admitting certain evidence and that the evidence is insufficient to sustain his conviction. We affirm.

# Facts and Procedural History

[3] On February 5, 2018, Adams used a driver's license belonging to Tyler Ruhl to complete a test-drive agreement with a Goshen, Indiana dealership. Adams drove a black Audi A4 out of the dealership. He did not return the vehicle.

[4]     At around 10:54 a.m. on February 7, 2018, Adams broke a glass window to the basement of Mishawaka Police Detective Scott Robinson's home and entered through the broken window. Adams took Detective Robinson's ballistic vest, his duty belt holding a X26 Taser, loose boxes of ammunition, a blue Nike duffle bag, a Smith and Wesson 9mm Shield handgun, and a jar of foreign currency. Security footage from a nearby business showed a black sedan pulling up to the detective's home at the time of the burglary.

[5]     One morning in "early February of 2018," Adams told his then-girlfriend Heather Rach that he "went and got" certain items from a "cop's house." Tr. p. 80. Adams showed Rach a blue Nike duffel bag that contained a handgun, a bullet-proof vest, a Taser, and some coins and bills. Adams informed Rach that the items "belonged to a police officer." Tr. p. 80.

[6]     On February 12, 2018, police were advised that Adams, using Ruhl's driver's license, was attempting to cash a fraudulent check at a Check Smart. Adams had driven to the Check Smart in a black Audi. When police arrived and approached Adams, a struggle ensued. Officers observed that Adams was wearing Detective Robinson's stolen handgun in a shoulder holster during the struggle. Police secured the weapon and placed Adams under arrest. During a subsequent search of the Audi, officers recovered Adams's driver's license and Detective Robinson's stolen Taser, a box of the stolen ammunition, and a pile of latex gloves. Officers also recovered Ruhl's driver's license from the staff at Check Smart.

[7] On February 14, 2018, the State charged Adams with Level 4 felony unlawful possession of a firearm by a serious violent felon, Level 6 felony resisting law enforcement, Level 6 felony auto theft, and Level 6 felony identity deception. The State later dismissed the unlawful-possession charge and added a Level 4 felony burglary charge. Adams entered into a negotiated plea agreement that called for him to plead guilty to resisting law enforcement and auto theft. Pursuant to the terms of the agreement, the State agreed to dismiss the identity-deception charge, cap the sentences for the two convictions at eighteen months, and run the capped sentences concurrently. The agreement stipulated that sentencing would occur following the resolution of the remaining burglary charge. The trial court conditionally accepted Adams's plea on July 17, 2018.

[8] Following a three-day jury trial, Adams was found guilty of Level 4 felony burglary. On March 5, 2019, the trial court accepted Adams's plea agreement; entered judgments of conviction for resisting law enforcement, auto theft, and burglary; and sentenced Adams to an aggregate term of nine and one-half years.

# Discussion and Decision

## I. Admission of Evidence

[9] Adams contends that the trial court erred in admitting certain evidence at trial. Specifically, Adams asserts that the trial court erred in admitting evidence relating to his alleged "vengeance for cops" and the theft of the Audi. Appellant's Br. p. 9. We review the trial court's evidentiary rulings for an abuse of discretion. *Snow v. State*, 77 N.E.3d 173, 176 (Ind. 2017). "An abuse of

discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances." *Id.* "The trial court's ruling will be sustained on any reasonable basis apparent in the record, whether or not relied on by the parties or the trial court." *Washburn v. State*, 121 N.E.3d 657, 661 (Ind. Ct. App. 2019).

[10] In challenging the trial court's admission of the above-mentioned evidence, Adams argues that the evidence should have been excluded because it was either not relevant or unfairly prejudicial. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence ; and (b) the fact is of consequence in determining the action." Ind. Evid. R. 401. Under Indiana Evidence Rule 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of … unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." "A trial court's discretion is wide on issues of relevance and unfair prejudice." *Snow*, 77 N.E.3d at 176. "In our review, we look to the totality of the circumstances and consider conflicting evidence in the light most favorable to the trial court's ruling." *Id.*

## A. Adams's Alleged Vengeance for Cops

[11] Rach testified that one morning in early February of 2018, she observed Adams bring in a blue Nike duffel bag containing "a gun, a bullet proof vest, a taser and some coins and bills." Tr. p. 80. Adams informed Rach that the items "belonged to a police officer" and that he had stolen the items from the officer's home. Tr. p. 80. Adams further informed Rach that he left other items at the

home undisturbed because he "was there to get the cop's gun and stuff." Tr. p. 80. Adams indicated that he was intent on taking the officer's belongings because he "had a vengeance." Tr. p. 80. Adams objected. After the trial court overruled Adams's objection, Rach testified that Adams indicated that he "had a vengeance out for cops because they hurt him during another altercation." Tr. p. 81.

[12] While Adams acknowledges that Rach's statement regarding his alleged vengeance for police officers "may have some relevance," he claims it should have been excluded for "causing unfair prejudice." Appellant's Br. p. 9. The State argues, and we agree, that Adams's statement to Rach about his alleged "vengeance for cops" is relevant as it establishes motive for burglarizing a police officer's home, taking only the officer's effects and leaving other valuable items behind. *See Whitham v. State*, 49 N.E.3d 162, 167 (Ind. Ct. App. 2015) (recognizing that evidence of hostility toward a victim is paradigmatic motive for committing a crime).

[13] Further, we cannot see how evidence relating to Adams's alleged vengeance for police officers is prejudicial to Adams given the other unchallenged evidence establishing his admission to committing the burglary, presence at the scene of the crime, and possession of Detective Robinson's stolen belongings. Adams did not object to Rach's testimony indicating that he admitted to going to Detective Robinson's home and taking Detective Robinson's property. This unchallenged testimony both placed Adams at the scene of the burglary and in possession of the stolen goods. Other unchallenged evidence establishes that, at

the time of his arrest, Adams was wearing a holster holding Detective Robinson's stolen handgun and the stolen Taser and ammunition were recovered from inside the vehicle that Adams was driving. Each of these facts is far more likely to have impacted the jury's decision than the challenged evidence relating to motive. The trial court did not abuse its discretion in admitting the challenged evidence.

## B. Theft of the Audi

[14] In the instant matter, Adams was charged with both auto theft and burglary. He pled guilty to the auto-theft charge and proceeded to trial on the burglary charge. Specifically, Adams admitted to stealing a black Audi during a test drive. Video shows that the burglar drove a black sedan to the scene of the burglary, Adams was driving a black Audi sedan at the time of his arrest, and certain items belonging to Detective Robinson were recovered from the vehicle. Adams argues that the trial court abused its discretion in admitting evidence relating to the theft of the vehicle at trial, asserting that it was unnecessary for the State to prove how Adams came into possession of the vehicle given that other independent evidence connected Adams and the black Audi to the burglary.

[15] For its part, the State argues that evidence relating to the auto theft was relevant to prove Adams's identity and the probative value of this evidence was not substantially outweighed by any prejudice. The evidence establishes that the burglar drove a black sedan and Adams was driving the black Audi sedan at the time of his arrest. A driver's license belonging to Ruhl was recovered by police

at the time of Adams's arrest. The State explained the presence of Ruhl's driver's license by providing testimony from a salesperson at the dealership from which the Audi was stolen indicating that on the day of the theft of the Audi, Adams provided a driver's license belonging to Ruhl.

[16] "Evidence of uncharged criminal activity is admissible to complete the story of a criminal transaction." *Miller v. State*, 593 N.E.2d 1247, 1253 (Ind. Ct. App. 1992), *trans. denied*. It is error to prevent the State from presenting evidence regarding earlier criminal conduct if the omission of the evidence "would result in giving the jury an incomplete or misleading impression regarding the totality of the circumstances." *Reeves v. State*, 953 N.E.2d 665, 671 (Ind. Ct. App. 2011). In this case, we agree with the State that the evidence of the prior auto theft was necessary to explain the relevance of Ruhl's driver's license. It would be impossible for the State to both explain the relevance of Ruhl's driver's license and omit evidence relating to the auto theft without confusing the jury. The trial court, therefore, did not abuse its discretion in admitting evidence relating to Adams's theft of the Audi.

[17] Furthermore, even if it had been error to admit the evidence relating to Adams's alleged vengeance for police officers or the theft of the Audi, any error would be harmless given the independent evidence of Adams's guilt. *See Meadows v. State*, 785 N.E.2d 1112, 1122 (Ind. Ct. App. 2003) ("The improper admission of evidence is harmless error when the reviewing court is satisfied that the conviction is supported by substantial independent evidence of guilt so

that there is no substantial likelihood that the challenged evidence contributed to the conviction.").

## II. Sufficiency of the Evidence

[18] Adams also contends that the evidence is insufficient to sustain his burglary conviction. "Our standard of review for challenges to the sufficiency of the evidence is well-settled." *Bell v. State*, 31 N.E.3d 495, 499 (Ind. 2015).

> We do not reweigh evidence or reassess the credibility of witnesses when reviewing a conviction for the sufficiency of the evidence. We view all evidence and reasonable inferences drawn therefrom in a light most favorable to the conviction, and will affirm if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt.

*Walker v. State*, 998 N.E.2d 724, 726 (Ind. 2013) (internal citation and quotation omitted). This is because the factfinder, and not the appellate court, "is obliged to determine not only whom to believe, but also what portions of conflicting testimony to believe, and is not required to believe a witness's testimony[.]" *Perry v. State*, 78 N.E.3d 1, 8 (Ind. Ct. App. 2017) (internal quotation and brackets omitted). "A person who breaks and enters the building or structure of another person, with intent to commit a felony or theft in it, commits burglary." Ind. Code § 35-43-2-1. The offense is "a Level 4 felony if the building or structure is a dwelling[.]" Ind. Code § 35-43-2-1(1).

[19] Rach's testimony indicated that after she observed Adams in possession of a duffel bag containing items which Adams indicated belonged to Detective Robinson, Adams admitted to going to Detective Robinson's home and taking property "from [Detective Robinson's] house." Tr. p. 80. Adams attempts to discredit Rach's testimony by claiming that she might have been biased against him and was testifying against him in the hopes that her testimony would influence her impending sentencing in another case. The jury, however, was explicitly told that Rach hoped her cooperation would result in a favorable sentence in an unrelated criminal matter and was instructed that it must consider any "interest, bias, or prejudice the witness may have." Tr. p. 181. We will assume the jury followed the trial court's instruction to consider any bias Rach may have had during its deliberations. *See Maffett v. State*, 113 N.E.3d 278, 284 n.3 (Ind. Ct. App. 2018) ("We assume a jury follows the instructions it is given."). Further, in addition to Rach's testimony, at the time of his arrest, Adams was driving a black Audi sedan similar to that driven by the burglar; items belonging to Detective Robinson, including a stolen Taser and ammunition, were found inside the vehicle; and Adams was in possession of Detective Robinson's stolen firearm.

[20] The evidence is sufficient to sustain Adams's burglary conviction. In challenging his conviction, Adams merely requests that we reweigh the evidence and witness credibility, which we will not do. *See Walker*, 998 N.E.2d at 726.

[21] The judgment of the trial court is affirmed.

Vaidik, C.J., and Riley, J., concur.